UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

J.S.C. (XXX-XX-0691)                     CIVIL ACTION NO. 10-cv-1571

VERSUS                                   JUDGE HICKS

U.S. COMMISSIONER, SOCIAL                MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

**Introduction**

J.S.C. ("Plaintiff") worked as an attorney for several years until he suffered a stroke in 2001 at the age of 59. He began to receive disability insurance benefits. As Plaintiff recovered, he returned to work under a program where the Agency continued to pay disability benefits so long as Plaintiff's earnings did not exceed a certain amount. The Agency later found that Plaintiff's earnings had exceeded the limits in certain months, so that Plaintiff had been overpaid $16,554.50.

Plaintiff applied for a waiver of overpayment recovery. ALJ Leslie J. Rodriguez held a hearing and issued a written decision that denied the request. Plaintiff appealed to the Appeals Council, which considered and addressed additional arguments, and affirmed the denial, making the Commissioner's decision final. Plaintiff then appealed to this court pursuant to 42 U.S.C. § 405(g). It is recommended, for the reasons that follow, that the Commissioner's decision be affirmed.

**Relevant Facts**

Plaintiff's health improved after his 2001 stroke, and he returned to work in 2002 and 2003 under a trial work period allowed by the Agency. Plaintiff was notified by letter in 2004 that the trial work period ended May 2003. The letter explained that Plaintiff would thereafter enter a 36-month period of extended eligibility where benefits would restart for any month his work was not substantial. The letter went on to explain what was considered substantial work. The amount may differ each year; for 2003 it was $800 per month, and in 2004 it was $810 per month. Tr. 44-47.

Plaintiff worked for the Capital Assistance Project of Louisiana. He received a small salary that was less than the default limit. For example, his salary in 2005 was $9,720, which equals $810 per month, which was just under the 2005 limit. The Agency determined, however, that Plaintiff's monthly income in 2004 and 2005 sometimes exceeded the default limit. His earnings were less than the limit in most months, but a few months had earnings around $900 that exceeded the limit. The earnings chart can be found at Tr. 195-96. Plaintiff told the Appeals Council that the source of the excess earnings was per diem he received for attending meetings of the Louisiana State Police Commission, an appointed and otherwise uncompensated position. Tr. 12. The Appeals Council responded that the State reported the amounts to social security as income, and there was no contrary evidence of record. Tr. 7.

Plaintiff's earnings also exceeded the monthly limit from February 2006 until he applied for retirement benefits in November 2006. The source of the excess income was a raise Plaintiff requested, apparently based on his misunderstanding of an Agency publication

dated January 2006. The publication announced a benefit increase based on a rise in the cost of living. One section had the heading: "What if I Work and Receive Retirement or Survivors' Benefits?" The publication stated that, for 2006, the earnings limit for workers under full retirement age (65 and eight months) was $12,480. Plaintiff satisfied that age limit, but he was receiving disability benefits, not the retirement or survivors' benefits addressed in that section of the publication.

Plaintiff, when he received the publication was earning $9,720 per year ($810 per month), which was below the default limit. He misunderstood the publication and sent it to his employer with a note that he could begin earning $12,500 per year and "still qualify." He asked if the budget would allow a raise to $12,000 a year. The employer apparently increased his salary to $12,500 per year. Tr. 197-200. Accordingly, his monthly earnings beginning in February 2006 far exceeded the default figure. Plaintiff converted to retirement insurance benefits in November 2006.

After various administrative proceedings, the Agency determined that Plaintiff is not entitled to a disability benefit for two months in 2004, three months in 2005, and from February 2006 afterward. Tr. 62. Plaintiff appealed and obtained a hearing before an ALJ. Plaintiff and his wife testified. With respect to the months in which Plaintiff exceeded the limit in 2004 and 2005, he pointed to a brochure (Tr. 193-194) in which the Agency addressed working while disabled. The page of the brochure that is in the record describes the trial work period and the 36-month period that follows. With respect to the 36 months, the brochure explains:

> During this time, you will receive your full Social Security benefit for any month your earnings fall below $800. Benefits would continue as long as you remain disabled and your earnings do not exceed $800 a month.

There is nothing in that language that would allow Plaintiff to reasonably believe he could obtain benefits during a month in which he earned more than $800 (or the limit for the relevant year). The language clearly contemplates looking at earnings month by month. The next part of the publication, however, states:

> **How Much Can I Earn Before I Start Losing Benefits?**
>
> Usually, earnings of more than $800 a month are considered substantial. If your earnings *average* less than $800 a month, your benefits generally would continue indefinitely.
>
> If your earnings *average* more than $800 a month, this is considered an indication of your ability to work. (Emphasis added.)

Plaintiff seized on the word average that appears twice in that provision and argued that his average monthly earnings for 2004 and 2005 would be less than $800 a month. Tr. 306.

Plaintiff also testified about how he requested a raise in 2006 based on his reading of an Agency publication. Plaintiff admitted that he would not always take the time to carefully examine things he received from the Agency and conceded that perhaps he should have been "more astute" and contacted Social Security, but he complained of the difficulty of doing so by telephone. Tr. 308-10.

**Waiver of Overpayment Rules**

The regulations applied by the ALJ are found at 20 C.F.R. § 404.506 to 404.509. Section 404.506(a) states that there shall be no adjustment or recovery in any case where an overpayment has been made "to an individual who is without fault if adjustment or recovery would either defeat the purpose of title II of the Act, or be against equity and good conscience." Section 404.507 states that in determining whether an individual is at fault, the Agency "will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations ... the individual has." The regulation also provides that what constitutes fault depends upon whether the facts show that the incorrect payment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) Acceptance of a payment which he either knew or could have been expected to know was incorrect.

**Analysis**

The ALJ observed that after Plaintiff exhausted his trial work period he was sent notices that he would be paid for each month his work was not substantial as long as his health problems remained. But the cited notice that explained substantial work to Plaintiff also used the word "average" in describing the amount of monthly earnings. It says: "Usually, we find that work is substantial if gross monthly earnings average more than the following amounts ... ." Tr. 46. In practice, however, it appears the Agency looked at

earnings month by month. The current version of the brochure that Plaintiff received no longer includes the reference to average earnings during the extended period of eligibility. It now says that the worker can still receive benefits "for any month" his earnings are not substantial. The ALJ also stated that Plaintiff's excess earnings were discovered by the Agency on an earnings enforcement referral, and only then did Plaintiff cooperate with providing updated earnings information. Tr. 19.

The court does not agree that the notices to Plaintiff, at least those cited in the record, establish that Plaintiff knew or should have known that his earnings would be evaluated for each month. The notice and the brochure referenced average earnings; the brochure did have another provision that suggested a month by month view. An Agency employee even wrote in the file, "I do see why he would be confused over the annual EN limit vs SGA." Tr. 61. Perhaps all this can be explained and makes perfect sense, but the Agency has not done so in the current record or briefs. The ALJ also found that the excess earnings were discovered on an earnings enforcement referral. The ALJ did not explain, but it is implied that Plaintiff was under an obligation to report such changes in income.

The burden of proof that a claimant was without fault rests on him. Bray v. Bowen, 854 F.2d 685, 687 (5th Cir. 1988). There is at least some evidence to perhaps justify Plaintiff's confusion on the average/monthly issue, but Plaintiff has not challenged the basic decision on fault on its merits, so the issue need not be explored further.

Plaintiff's Statement of Errors section of his brief identifies two issues for appeal. The first complains that the ALJ did not make specific findings with respect to Plaintiff's age,

intelligence, and physical and mental limitations. Section 404.507 states that the Administration will consider all pertinent circumstances, including those factors, but it does not say that the Agency must make specific, written, findings as to each of those factors, and Plaintiff has not cited any such authority. To the extent such findings might be required, the court should not vacate a decision based on a potential procedural flaw unless the substantial rights of a party have been affected. Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988) ("Procedural perfection in administrative proceedings is not required."); and Morris v. Bowen, 864 F.2d 333, 335-36 (5th Cir.1988) (applying harmless error standard in social security case). See also Palomo v. Barnhart, 154 Fed.Appx. 426, n. 13 (5th Cir. 2005).

    Plaintiff argues that there was evidence of diminished intellectual functioning that warranted discussion. He points to a neuropsychological evaluation by Dr. Thomas Staats done in August 2001, after Plaintiff suffered strokes in May and June of that year. Plaintiff was unable to stand or walk and had difficulty talking after the second stroke. He required several days of hospitalization, followed by rehabilitation. Dr. Staats found that Plaintiff had recovered to the point that he had an average range of intellectual functioning and could read at the college level but had difficulty with arithmetic. Plaintiff's brief focuses on the memory functions section of the report. That section stated that long-term memory was within normal limits, and tests indicated a general memory quotient in the low-average range. Dr. Staats said Plaintiff's memory had been significantly diminished from a prior high level of occupational functioning to a zone common to unskilled laborers. Other memory tests

indicated borderline range functioning or at least a significant impairment. Dr. Staats concluded that Plaintiff was then incapable of gainful employment and should seek disability benefits in the interim until he reached maximum improvement at 18 months post-stroke. Tr. 275-83.

Plaintiff also points to a September 2001 Agency psychiatric review technique form on which the consultant checked boxes to indicate memory impairment and loss of measured intellectual ability. Tr. 284-97. Plaintiff also cites a report by Dr. Roger Kelly issued in January 2004 in connection with the claim for benefits. His objective findings included impaired cognition, but he said the patient had made significant progress, was capable of part-time work in an administrative job, and mild further improvement was expected. Dr. Kelly found that Plaintiff had only "some limitation in ability to read." Tr. 298-99.

Plaintiff did not complain at the March 2008 hearing that his extra earnings could be blamed on memory impairment nor other intellectual limitation in the relevant 2004 to 2006 time-frame. Plaintiff was working as an attorney at the time the mistakes were made, so he had obviously recovered significantly from the conditions depicted in the early medical reports. The transcript of the hearing indicates that Plaintiff was articulate, understood the issues, and recalled the relevant events. Tr. 302-16.

The undersigned has reversed or recommended reversal in cases where the Commissioner failed to address significant lines of evidence that could reasonably cast doubt on the outcome. See, e.g., Rey v. Commissioner, 2009 WL 249702 (W.D. La. 2009). This is not such a case. The evidence of diminished abilities predates the relevant events, and

there is no significant evidence that Plaintiff had such limitations at the time the mistakes were made or that such limitations contributed to the mistakes. His oral and written submissions in the record, plus his work as an attorney at the relevant time, weigh heavily against such suggestions.

Section 404.506 provides for waiver of recovery of an overpayment with respect to a person who is without fault *and* when recovery would either defeat the purpose of Title II or be against equity and good conscience. Plaintiff argues in his second issue on appeal that the ALJ erred by not making findings regarding good conscience or equity. As the ALJ noted, he did not need to address that issue because he found Plaintiff was not without fault. That finding should be affirmed on appeal, so there is no error in regard to this second issue. The ALJ noted, in the alternative, that Plaintiff had already agreed to have his monthly benefit reduced to recoup the overpayment, demonstrating an ability to repay that would not defeat the purpose of the Act or be against equity and good conscience. Tr. 20. Plaintiff does not point to any evidence that would contradict that alternative finding.

**Conclusion**

The record does not suggest that Plaintiff intentionally attempted to take advantage of the benefits program, but he has not satisfied his burden of showing that ALJ committed error or violated substantial rights by not specifically discussing his intellectual or memory capacity in the finding that Plaintiff was not without fault. The Commissioner's final decision

was not based on a legal error, and it is supported by the rather modest substantial evidence required by law. It should be affirmed.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny waiver of recovery of overpayment should be affirmed.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of February, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE